UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL EAMON BROOKS,                    )
                                         )
              Plaintiff,                 )
      v.                                 )        CIVIL ACTION
                                         )        NO. 15-11872-JGD
CAROLYN W. COLVIN,                       )
Acting Commissioner of Social Security,  )
                                         )
              Defendant.                 )

## MEMORANDUM AND ORDER ON CROSS-MOTIONS REGARDING DENIAL OF SOCIAL SECURITY BENEFITS

November 18, 2016

DEIN, U.S.M.J.

### I.  INTRODUCTION

Plaintiff, Michael Eamon Brooks ("Brooks"), has brought this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. The matter is presently before the court on Brooks' motion for an order reversing the Commissioner's decision (Docket No. 14), and on the Commissioner's motion for an order affirming the decision.  (Docket No. 15).  Brooks also moves this court for remand on the grounds of newly discovered evidence.  (Docket No. 18).

In support of his appeal, Brooks argues that although the Administrative Law Judge ("ALJ") found that Brooks underwent surgery for a benign brain tumor and has depressive

disorder, anxiety disorder and substance abuse in remission (Tr. 270), he failed to consider that

Brooks suffers from chronic traumatic encephalopathy ("CTE"), having been concussed "at

least" fifteen times and that he failed to consider the interplay between Brooks' traumatic head

injuries and his mental impairments.[1]  (Docket No. 14 at 1-4).

        In support of his motion to remand, Brooks asserts that Boston Medical Center ("BMC")

failed to produce a "four inch stack" of his medical records which, inter alia, indicate that

Brooks had significant complications after the surgery to remove the tumor and that a second

surgery was performed.  Brooks asserts further that he was unaware of the existence of these

records, in part, because he was in such a dire state and was unaware that he underwent a

second brain surgery.  (Docket No. 18).  These records were provided to counsel on or around

January 5, 2016.  (Id. at 1.)  Counsel filed the motion to remand on behalf of Brooks and alerted

this court to the discovery of the new records on January 6, 2016, the same day as this court

conducted a hearing on the appeal.  (Docket No. 19).  Specifically, according to Brooks, the

newly produced medical records reflect "two multi-day stays in the surgical intensive care unit,"

and a second surgery for a "large nonfunctioning pituitary adenoma," as well as a diagnosis not

previously known to him of Syndrome of Inappropriate Antidiuretic Hormone Secretion

("SIADH").  (Docket No. 18 at 1; Docket No. 18-1 at 11, 15, 18).  The new records also show that

Brooks' tumor was not entirely removed even upon a second surgical attempt.  (Id. at 1, 11).

---

[1] This court does not address the merits of Brooks' appeal given the disposition of his motion to remand
based upon the discovery of new evidence.

For the reasons detailed below, Brooks' motion to remand is ALLOWED.  This matter is remanded to the ALJ for consideration of newly produced medical records and a determination as to whether Brooks is disabled in light of the newly produced evidence.

## II.  STATEMENT OF FACTS[2]

Brooks was born in 1976.  He was 35 years old on his claimed disability onset date of July 1, 2010.  (Tr. 284, 320).  He attended Boston College High School and Berkshire Preparatory School, where he played hockey.  (Tr. 289).  He testified at the hearing before the ALJ that he suffered repeated concussions as a result of playing sports in school.  (Id.).  The medical records submitted to the ALJ consistently report a history of concussions at a young age from playing sports (see, e.g., Tr. 552, 606), and that he almost dropped out of high school in his senior year due to significant depressive episodes.  (Tr. 526 (report of Dr. Pulas, psychiatrist)).  He was, however, able to finish high school and attended four years of college.  (Tr. 286).

On December 16, 2010, Brooks was working a construction job when a "steel support beam" struck the left side of his face and head.  (Tr. 512).  He experienced drowsiness, headache, and vision changes, and went to the BMC emergency room later that day.  (Tr. 513-14).  Brooks reported to BMC medical staff that he had a history of concussions related to playing sports and that he was taking Klonopin for anxiety.  (Tr. 512).  The emergency room doctor diagnosed Brooks with head trauma and ordered a CT scan.  (Tr. 513-14).  The radiology report revealed a "pituitary mass," unrelated to being struck in the head with the beam (an

---

[2]  The record can be found at Docket No. 10 on the Court's Electronic Filing System.  References to the record shall be cited as "Tr. __" and the page numbers appear on the bottom right hand side.

oddly fortuitous event for Brooks), and suggested that additional imaging be conducted.  (Tr. 518).

On July 7, 2011, Brooks was seen by BMC's department of neurosurgery.  (Tr. 552). Brooks reported that since the accident, he had "experienced multiple symptoms including drooping right eye, hand shaking, anxiety attacks, loss of appetite, loss of libido and headache." (Id.).  After additional imaging, Brooks was diagnosed with a pituitary macroadenoma ("brain tumor").  (Tr. 702).  He underwent surgery to remove the tumor on March 9, 2012.  (See, e.g., Tr. 292 (Brooks' testimony before the ALJ); Tr. 682 (March 28, 2012 notes from a follow-up visit to Dr. Pulas)).  At an April 24, 2012 follow-up appointment, Brooks stated that he felt "well," and denied visual symptoms or headaches.  (Tr. 690).  In September of 2013, Brooks reported no significant changes in vision and no visual field deficits, but did report "occasional" headaches and photophobia.  (Tr. 732).  He was concerned with his weight and reported significant unintentional weight loss.  (Id).

With respect to his mental impairments, Dr. Pulas, who would become his treating psychiatrist, first saw Brooks on December 16, 2011, and diagnosed him with bipolar disorder II and possible panic disorder and/or PTSD.  (Tr. 653).  At that time, Brooks' medications included Clonazepam, Suboxone, Doxepin, Proventil, Cabergoline, Seroquel, and Propranolol.  (Tr. 654). Dr. Pulas noted that Brooks' medical history included pituitary adenoma, acute stress disorder, smoker, history of concussion, headache, anxiety, insomnia, opioid type dependence in remission, opioid type dependence unspecified abuse, post-traumatic stress disorder, bipolar disorder, substance abuse in remission, and bipolar II disorder.  (Tr. 651).  As noted by Dr. Pulas, Brooks' trauma history included assaults, physical abuse, as well as abuse at a catholic school in

junior high (which is referenced under the sub-heading of sexual abuse).  (Tr. 650, 652).  Dr. Pulas assessed a Global Assessment of Functioning ("GAF") score of 60.  (Tr.  653).  In another version of Dr. Pulas' report of Brooks' December 16, 2011 visit, he lists a GAF score of only 50.  (Tr. 526, item 1).  In February 2012, Dr. Pulas added Fluoxetine and Zyprexa to Brooks' medications.  (Tr. 667).  A few months later, in May 2012, Dr. Pulas indicated a normal mental status examination other than an "anxious" mood.  (Tr. 692).  Dr. Pulas assigned a GAF score of 65, and commented, "Patient's mood is improved now.  No depression, seems to have had a good response to zyprexa/fluoxetine."  (Tr. 692-93).

Additional factual details relevant to this court's analysis are described below where appropriate.

### Procedural History

Brooks filed his applications for SSI and SSDI in October 2011, alleging a disability onset date of July 1, 2010.  (Tr. 320, 419, 426).  After those applications were denied on initial review and on reconsideration, a hearing was held before the ALJ on October 10, 2013.  (Tr. 279-319).  On November 14, 2013, the ALJ issued a decision finding Brooks was not disabled and therefore not entitled to the requested benefits.  (Tr. 267-74).  In March 2015, the agency's Appeals Council denied review, making the ALJ's decision the Commissioner's final decision in this case.  (Tr. 1).

### The ALJ's Decision

When evaluating claims for SSI and SSDI benefits under the Act, the Commissioner employs a five-step sequential evaluation process.  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  The first inquiry in the five-step process is whether the claimant is "engaged in

substantial gainful work activity[.]"  Id.  If so, the claimant is automatically considered not

disabled and the application for benefits is denied.  See id.  In the instant case, the ALJ found

that Brooks had not engaged in substantial gainful activity since the alleged disability onset

date of July 1, 2010.  (Tr. 269, Finding 2).  Thus, he proceeded to the next step in the analysis.

(Tr. 270).

        The second inquiry is whether Brooks has a "severe impairment," meaning an

"impairment or combination of impairments which significantly limits [the claimant's] physical

or mental ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the

claimant is considered not disabled and the application for benefits is denied.  See Seavey, 276

F.3d at 5.  Here, the ALJ concluded that Brooks "does not have an impairment or combination

of impairments that has significantly limited (or is expected to significantly limit) the ability to

perform basic work-related activities for 12 consecutive months; therefore, [he] does not have

a severe impairment or combination of impairments."  (Tr. 270).  Therefore, the ALJ found

Brooks not disabled at Step Two without proceeding to Steps Three through Five.  (Tr. 274,

Finding 5).  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("If we can find that you are disabled

or not disabled at a step, we make our determination or decision and we do not go to the next

step.").

### Brooks' Proffer of Additional Evidence

        At the opening of the administrative hearing on October 10, 2013, Brooks' counsel

informed the ALJ that the medical records submitted were not complete because they did not

include records from Brooks' March 9, 2012 brain surgery.  (Tr. 283).  The ALJ gave counsel one

week to submit the additional records from BMC.  (Tr. 284).  According to counsel, he and

Brooks went from the hearing directly to BMC to obtain the missing medical records.  (Docket

No. 18 at 1).  BMC gave them medical records and those were provided to the ALJ.  (Id.).

On January 6, 2016, the day of the hearing before this court, counsel for Brooks filed

"Plaintiff's Request for Remand to Evaluate New Evidence."  (Docket No. 18).  Therein, counsel

explained that when he first went to BMC to obtain the records following the administrative

hearing, he had no way of knowing that the records were incomplete.  (Id.).  He states that only

after receiving the Commissioner's memorandum in the instant appeal, did he appreciate how

incomplete the medical records were.  (Id.).  Brooks, sometime in December of 2015, went back

to BMC and obtained a "four (4) inch stack of documents," which Brooks provided to his

counsel on January 5, 2016.  (Id.).  These records were not part of the record before the ALJ,

and were not previously submitted to, or obtained by, the SSA.  According to counsel, the

records indicate that Brooks had serious complications stemming from his initial brain surgery

on March 9, 2012, and that he underwent a second brain surgery on March 18, 2012, a fact that

Brooks himself did not recall.  (Id. at 1; Docket No 18-1 at 11).  Specifically, counsel asserts that

the newly obtained records provide additional insight into both Brooks' physical and mental

impairments.  For example, the newly submitted records show that neither the first, nor the

second brain surgery, resulted in a complete removal of Brooks' tumor (Docket No. 18-1 at 1

("the soft portions of the tumor and as much of the capsule that appeared safe to remove

based on proximity to vital structures were removed"); id. at 11 ("Additional tumor within the

grasp was not bluntly pulled out of position for removal due to retraction of the overlying and

adjacent dura and arachroid.")).  This fact could not have been considered by the ALJ because

of BMC's failure to provide all the medical records, including the operative report and related

documents from Brooks' surgeries.  In addition, according to counsel, the newly obtained

records indicate a diagnosis of Syndrome of Inappropriate Antidiuretic Hormone Secretion

secondary to his brain tumor, which can result in nausea or vomiting, cramps or tremors,

depressed mood, memory impairment, irritability, personality changes, such as combativeness,

confusion, and hallucinations.  (Docket No. 18 at 1-2; Docket No. 18-2).

Having reviewed the record on appeal and the newly submitted documents, this court

turns to the merits of Brooks' motion to remand.

### III.  ANALYSIS

### A.  Standard of Review

Brooks is seeking judicial review of the Commissioner's final decision pursuant to the

Social Security Act, § 205(g), 42 U.S.C. § 405(g) (the "Act"), which provides in relevant part that:

> Any individual, after any final decision of the Commissioner of Social
> Security made after a hearing to which he was a party, irrespective of the
> amount in controversy, may obtain a review of such decision by a civil
> action .... The court shall have power to enter, upon the pleadings and
> transcript of the record, a judgment affirming, modifying, or reversing the
> decision of the Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of the Commissioner
> of Social Security as to any fact, if supported by substantial evidence,
> shall be conclusive ....

42 U.S.C. § 405(g).  The Supreme Court has defined "substantial evidence" to mean "more than

a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420,

1427, 28 L. Ed. 2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct.

206, 217, 83 L. Ed. 126 (1938)); accord Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d

765, 769 (1st Cir. 1991).

It has been explained that:

> In reviewing the record for substantial evidence, [the court is] to keep in mind that "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]."  The [Commissioner] may (and, under [her] regulations, must) take medical evidence.  But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [her], not for the doctors or for the courts.  [The court] must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the record as a whole, could accept it as adequate to support [her] conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  Thus, on an appeal of a denial of SSDI and SSI benefits, the court is "not called upon to examine the evidence as initial factfinder.  Rather, [the court's] review is limited to a determination of whether the findings of the [Commissioner] were supported by substantial evidence."  Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982).

The burden is on the claimant to prove that he is disabled in order to establish his right to social security benefits.  See Bowen v. Yuckert, 482 U.S. 137, 146, 107 S. Ct. 2287, 2294, 96 L. Ed. 2d 119 (1987).  To be considered disabled, a claimant must have an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  The impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  42 U.S.C. § 423(d)(2)(A).

For the reasons that follow, this court remands this case to the ALJ for consideration of medical records relating to Brooks' brain tumor and adequate development of the record so that the ALJ may consider the merits of Brooks' claim that he was disabled due to his history of traumatic brain injury, brain tumor, and mental impairments.

**B.     Requirements for Remand**

The Social Security Act provides in relevant part that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ."  42 U.S.C. § 405(g).  In the instant case, the new evidence consists of medical records describing the surgical procedures Brooks underwent to remove his brain tumor, whether the surgeries were completely successful in removing the entire tumor, as well as attendant complications suffered by Brooks.  Under 42 U.S.C. § 405(g), a remand is appropriate if Brooks demonstrates that this evidence "is both 'new' and 'material,' as those terms are used in the statute[,]" and that there was "good cause" for his "failure seasonably to have offered the evidence."  Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 139 (1st Cir. 1987).  This court finds that Brooks has satisfied this standard, and that a remand is warranted under the facts of this case.

**Newness/Materiality**

"In order for the evidence submitted by [Brooks] to be deemed 'new' within the meaning of the Act, the evidence must not have been contained within the administrative record at the time the ALJ rendered his decision."  Gullon v. Astrue, No. 11-099ML, 2011 WL 6748498, at *9 (D.R.I. Nov. 30, 2011) (slip op.).  Additionally, "[u]nder 42 U.S.C. § 405(g),

10

remand is appropriate only where the court determines that further evidence is necessary to develop the facts of the case fully, that such evidence is not cumulative, and that consideration of it is essential to a fair hearing."  Evangelista, 826 F.2d at 139.  "The mere existence of evidence in addition to that submitted before the hearing examiner will not constitute sufficient cause for remand.  Rather, to qualify under the new/material standard, the discovered data must be meaningful — neither pleonastic nor irrelevant to the basis for the earlier decision."  Id. at 139-40 (internal citation omitted).

The treatment records that Brooks submitted to this court during the hearing on the parties' motions meet these requirements.  As detailed above, those records were not previously obtained by or submitted to the SSA, and were not part of the administrative record before the ALJ.  Moreover, they are not cumulative of other evidence that is contained in the administrative record.  Unlike the newly proffered materials, none of the evidence in the record before the ALJ described the extent of Brooks' brain tumor or that the entire tumor could not be safely removed.  In addition, the new materials give additional insight into complications suffered by Brooks.

At the hearing before this court, the Commissioner argued that a remand would be inappropriate because the new evidence would have no prospect of altering the ALJ's decision. This court disagrees.  A "remand is indicated only if, were the proposed new evidence to be considered, the [Commissioner's] decision 'might reasonably have been different.'" Evangelista, 826 F.2d at 140 (quoting Falu v. Sec'y of Health & Human Servs., 703 F.2d 24, 27 (1st Cir. 1983)).  In the instant case, the ALJ's decision might reasonably have been different if he knew the details of Brooks' surgeries and the complications he suffered, including that his

tumor could not be completely removed.  Thus, the court is satisfied that the evidence meets

the criteria for newness/materiality.  As such, the ALJ should be given the opportunity to

consider the previously missing medical records.

### Good Cause

This court also concludes that under the circumstances presented here, Brooks had

good cause for failing to submit the treatment records to the ALJ.  As an initial matter, there is

no dispute that Brooks sought to obtain his medical records from BMC, but that BMC failed to

provide a complete set of records.  There was "no attempt to subvert the administrative

process," and the fault, under the circumstances of this case, does not fall on Brooks.  Norwood

v. Astrue, Civil Action No. 6:07CV023, 2008 WL 4130854 (W.D. Va. Aug. 27, 2008) (case

remanded where, inter alia, the operative report and other hospital records which provided

objective medical evidence were not part of the evidence presented to the ALJ).

Moreover, the First Circuit has "long recognized that social security proceedings 'are not

strictly adversarial.'"  Evangelista, 826 F.2d at 142 (quoting Miranda v. Sec'y of HEW, 514 F.2d

996, 998 (1st Cir. 1975)).  Despite the fact that Brooks was represented by counsel throughout

the administrative proceedings, the Commissioner "bear[s] a responsibility for adequate

development of the record in these cases."  Id.; see also Atkinson v. Barnhart, 87 F. App'x 766,

769 (2d. Cir. 2004) (affirmative duty to develop administrative record is present even when

claimant is represented by counsel).  The Social Security Act provides that the Commissioner

"shall develop a complete medical history of at least the preceding twelve months for any case

in which a determination is made that the individual is not under a disability."  42 U.S.C.

§ 423(d)(5)(B).  And, if there is "reason to believe that development of an earlier period is

necessary," the Commissioner should develop records pertaining to that period as well.  20 C.F.R. §§ 404.1512(d); 416.912(d).  "If the ALJ fails to fill those evidentiary gaps, and if they prejudice plaintiff's claim, remand is appropriate."  Mickevich v. Barnhart, 453 F. Supp. 2d 279, 287 (D. Mass. 2006) (citation omitted); accord, King v. Colvin, 128 F. Supp. 3d 421, 438 (D. Mass. 2015) (ruling that the failure to develop an adequate record provides "grounds for reversing the Commissioner's decision pursuant to sentence four of Section 205(g), and ordering the case remanded for further proceedings").  In the instant case, there is no question that the BMC medical records were relevant, as evidenced by the fact that the ALJ granted Brooks time to obtain the records.  Nevertheless, both counsel and the ALJ failed to recognize that there were gaps in the medical evidence.  This court finds that the record in this case was not adequately developed and that the development of a complete medical history was essential to a fair hearing.

Accordingly, for the reasons stated, this court concludes that good cause exists for a remand so that the ALJ may consider the merits of Brooks' claim that he was disabled based on a complete medical record.

## IV.   CONCLUSION

For all the reasons detailed herein, "Plaintiff's Request for Remand to Evaluate New Evidence" (Docket No. 18) is ALLOWED.  "Plaintiff's Motion for Order Reversing the Commissioner's Decision" (Docket No. 14) and "Defendant's Motion for Order Affirming the Decision of the Commissioner" (Docket No. 15) are DENIED AS MOOT.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge